**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Carino, married but filing as an individual,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Peter Gorski, as Special Administrator for the Estate of Tate A Lynch; Paul Sansone; Jacob Robinson; and City of Casa Grande, Arizona, a municipal corporation,<br><br>　　　　　Defendants. | No. 07-455-PHX-NVW<br><br>**ORDER** |

This is a civil rights action brought under 42 U.S.C. § 1983 by Plaintiff Daniel Carino ("Carino") against the City of Casa Grande ("the City") and three of its police officers, Lynch, Sansone, and Robinson (collectively "the officers"). Carino alleges that the officers subjected him to excessive force, wrongful arrest, and malicious prosecution in violation of his rights under the Fourth Amendment to the United States Constitution and Arizona law. Defendants now move for summary judgment. (Doc. # 84.)

**I. Background**

The parties dispute the events leading to Carino's arrest. "[W]e view the evidence in the light most favorable to [Carino,] the nonmoving party, and accept the version of all disputed facts most favorable to him." *Drummond v. City of Anaheim*, 343 F.3d 1052, 1054 n.1 (9th Cir. 2003).

1    In the early morning of January 23, 2005, Carino was standing on the sidewalk
2 next to his vehicle with his wife Becky and two friends. Sergeant Tate A. Lynch
3 approached the group because their vehicle had been seen leaving the scene of a potential
4 fight at a party in the neighborhood. (Doc. # 82, Ex. A at 15–16.) Sergeant Lynch
5 questioned the group, grew angry with Becky, cursed at her, and ordered her to shut up.
6 (Doc. # 91, Ex. P at 129–30, 137–38.) He then ordered them to leave the area on foot.
7 They complied and walked up the street to a parking lot. Sergeant Lynch and another
8 officer, Paul Sansone, followed the group, parked their vehicles, and approached the
9 Carinos, who were hugging each other to keep warm. (*Id.*, Ex. H. at 71; Ex. M at 63).
10 Sergeant Lynch asked Becky for identification. Carino responded that he had his wife's
11 identification, but before he could retrieve it Sergeant Lynch grabbed Becky by her left
12 arm. Carino reached his arm out and told Sergeant Lynch to stop, but did not make
13 contact with the officer. Sergeant Lynch let Becky go, grabbed Carino's outstretched
14 arm, and began pulling him away from Becky and towards the ground. (*Id.*, Ex. A at
15 35–38.) Becky's sister later observed bruises on her left arm. (*Id.*, Ex. N at 166–67.)

16    At that point, Officer Jacob Robinson arrived and began to assist Sergeant Lynch
17 by grabbing Carino's other arm. (*Id.,* Ex. A at 15; doc. # 82, Ex. C at 14.) Officer
18 Sansone, who had been monitoring Carino's friends, then ran up, placed his Taser in
19 Carino's back, and pulled the trigger. (*Id.*, Ex. D at 76.) Carino and officers Lynch and
20 Robinson fell to the ground together. The officers hit Carino in the ribs, the sides of his
21 head, and his face, and used their Tasers on him. They continued such treatment even
22 after Carino was handcuffed. (Doc. # 91, Ex. A at 38–40.) The following day, Carino's
23 doctor observed that he had lacerations above his eyes and injuries to his back, chest, and
24 elbows. (*Id.*, Ex. O at 49–50.) A City of Casa Grande paramedic who examined Carino
25 at the scene within twenty minutes of the incident testified that he did not detect any signs
26 of alcohol impairment. (*Id.*, Ex. I at 174.) One of Carino's friends, Veronica Brown,
27 witnessed the incident and testified that Carino and his wife never argued or yelled at
28 each other that evening, that Carino had only one drink over the entire course of the

1  evening and never appeared intoxicated,[1] that Carino never resisted the officers in any
2  way, and that once Carino was taken to the ground he was never on his feet again. (*Id.*,
3  Ex. B ¶ 5, 10, 11.)

4  The officers told a different story in their reports. They reported that Carino and
5  his wife appeared intoxicated and that they approached the couple in the parking lot
6  because they heard Becky yelling and cursing at her husband. Sergeant Lynch wrote that
7  he asked the couple to separate from one another because he feared one of them would
8  get hurt, and when they refused, he attempted to separate them by force. Carino resisted
9  so Sergeant Lynch and Officer Robinson began to struggle with him, whereupon Officer
10 Sansone deployed his Taser causing the group to fall. The officers' reports then describe
11 a long struggle, which included Carino getting back to his feet, charging Sergeant Lynch,
12 punching him in the face, and slamming his head against the pavement. (*Id.*, Ex. A
13 1–17.)

14 After he was arrested, Carino appeared before a magistrate judge for a preliminary
15 hearing. The magistrate judge relied on a statement by Sergeant Lynch, which was
16 consistent with his report, to find that they had probable cause to arrest him. (Doc. # 82,
17 Ex. G.) Later, a grand jury indicted Carino for two felony counts of assault and one
18 felony count of resisting arrest. The sole witness to testify before the grand jury had no
19 first-hand knowledge of the incident and relied exclusively on the officers' reports to

---

[1] The officers object that Veronica Brown is not qualified to provide her opinion about whether Carino was intoxicated. Fed. R. Evid. 701 permits lay opinion testimony if it is rationally based upon the perception of the witness, helpful to the fact finder, and does not involve scientific, technical or specialized information. Lay witness testimony about whether someone is intoxicated is generally admissible under these requirements. *See, e.g.*, *United States v. Mastberg*, 503 F.2d 465, 470 (9th Cir. 1974) ("[A] lay witness may state his opinion that a person appeared nervous or intoxicated."); *United States v. Horn*, 185 F. Supp. 2d 530, 560 (D. Md. 2002) (collecting authorities). The officers' objection is therefore overruled. However, even were her opinion excluded, it is reasonable to infer the same conclusion from her sworn statement that Carino had only one drink over the entire evening, and the paramedic's testimony that Carino displayed no signs of intoxication. The court must draw this inference in favor of Carino on the officers' motion for summary judgment.

1  prepare his testimony. (Doc. # 91, Ex. C at 13–15.)  Following the indictment, the Deputy
2  County Attorney reviewed the officers' reports, attended depositions, determined that the
3  arrest was supported by probable cause, and proceeded to prosecute Carino.  (Doc. # 82,
4  Ex. J at 26–27.)  Carino was tried and acquitted by a jury on January 12, 2007.  He filed
5  his original complaint in this suit seven days later, asserting only federal causes of action.
6  (Doc. # 1, Ex. A.)  On February 7, 2007, Carino served a notice of claim on the City and
7  the police officers, followed by an amended notice of claim on May 31, 2007.[2]  (*Id.*, Exs.
8  L, M.)  He amended his complaint to include a state law claim of malicious prosecution
9  on September 14, 2007.  (Doc. # 32.)

## II.  Legal Standard for Summary Judgment

Fed. R. Civ. P. Rule 56(c) provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  A "genuine issue" of material fact will be absent if, "viewing the evidence and inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law." *Jones v. Halekulani Hotel, Inc.*, 557 F.2d 1308, 1310 (9th Cir. 1977); *see also Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1111 (9th Cir. 2001). Cases alleging use of excessive force in violation of the Fourth Amendment to the United States Constitution "nearly always require[] a jury to sift through disputed factual contentions, and to draw inferences therefrom," and therefore "summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Lolli v. County of Orange*, 351 F.3d 410, 415–16 (9th Cir. 2003) (citing *Santos v. Gates*, 287

---

[2] Defendants originally argued that the officers were not personally served with notice of the state-law claims, but have since conceded that service was proper. (Doc. # 95 at 9.)

- 4 -

F.3d 846, 853 (9th Cir. 2002)).[3]

## III. Municipal Liability

To maintain an action against a municipality under § 1983, a plaintiff must allege that his constitutional rights were violated by a policy, practice, or custom of the municipality. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Carino does not contend that the City had any formal policy of allowing its officers to violate the Fourth Amendment, nor does he contend that any policy-making official ratified the officers' conduct. Rather, his argument is that the City had a practice or custom of failing to discipline its officers, which caused the officers to believe they could violate the law with impunity, including by using excessive force to arrest Carino without probable cause. For such a practice or custom to be actionable, it must have been "so 'persistent and widespread' that it constitute[d] a 'permanent and well settled city policy.'" *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Monell*, 436 U.S. at 691). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* (citing *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984)).

Carino's primary evidence of lack of discipline in the City of Casa Grande Police

---

[3] Citing *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987), Defendants contend that Carino's version of the incident is so highly improbable that he should have to "present more persuasive evidence than would otherwise be necessary" to survive summary judgment. *Franciscan Ceramics* is not an excessive force case. Excessive force cases nearly always involve two dramatically different versions of a single event. *See, e.g.*, *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007). At base, Defendants find Carino's version of the incident exceedingly improbable because he has not "explain[ed] why these officers, who had never before been the subject of a complaint involving the use of excessive force, would engage in such strange behavior." (Doc. # 95 at 3.) But the officers' subjective motivations have no place in an excessive force inquiry under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 397–99 (1989). There is no reason to hold Carino to a higher-than-normal standard of proof on Defendants' motion for summary judgment.

- 5 -

1  Department is the testimony of his expert, who reviewed the department's disciplinary
2  record.  However, when asked whether his review revealed that the City had a practice of
3  failing to discipline its officers, the expert replied, "I don't know at this point."  (Doc. #
4  82, Ex. N at 170.)  Carino has not provided any evidence beyond what his expert
5  reviewed.  His response to the motion for summary judgment relies upon the same
6  evidence reviewed by his expert, none of which shows a persistent and widespread failure
7  to discipline officers for using excessive force, conducting unwarranted arrests, or
8  otherwise violating the legal rights of citizens.  Carino has failed to provide evidence
9  from which a reasonable jury could conclude that the City had a practice or custom of
10 laxly disciplining its offers.  The City's motion for summary judgment will therefore be
11 granted.

## IV.  Qualified Immunity

Police officers receive qualified immunity for their official actions.  Qualified immunity shields government officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The first step in a qualified immunity analysis is to determine "based upon the facts taken in the light most favorable to the party asserting the injury, did the officer's conduct violate a constitutional right?"  *Johnson v. County of L.A.*, 340 F.3d 787, 791 (9th Cir. 2003).  "If there was a constitutional violation, 'the second inquiry is whether the officer could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right."  *Id.* at 791–92.  The officers assert a qualified immunity defense against Carino's Fourth Amendment claims of excessive force and wrongful arrest.

### A.  Excessive Force

"The Fourth Amendment requires police officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances facing them." *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) (citing *Tennessee v.*

- 6 -

1  *Garner*, 471 U.S. 1, 7–8 (1985)).

> To determine whether a specific use of force was reasonable, we must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." Relevant factors to this inquiry include, but are not limited to, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." When appropriate, our reasonableness determination must also make "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."

*Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)) (citations omitted).

The officers have done little more than present their own version of the facts and ask the court to rule in their favor. They have utterly failed to show that the force they applied was objectively reasonable under Carino's version of the facts, which the court must accept as true for purposes of this motion. Accepting Carino's version of the incident, a reasonable jury could find that the force employed by the officers was unreasonable. The quantum of force used against Carino was severe. Before handcuffing him, the officers used their Tasers on him and hit him in the ribs, face, and head. They continued to do so even after he was in handcuffs. Carino was not committing any crime at the time the officers approached him. He was sober, and he threatened neither the officers nor his wife. Even under the officers' version of events, it was Becky Carino who appeared hostile, not her husband. When Sergeant Lynch grabbed Becky's arm, Carino reached out his arm and told him to stop, but did not make contact with the officer.

Carino's reaching out his arm does not justify the force subsequently used by the officers. "A person has the 'limited right to offer reasonable resistance to an arrest that is the product of an officer's personal frolic. That right is . . . [triggered] by the officer's bad faith or provocative conduct.'" *Id.* at 479 (quoting *United States v. Span*, 970 F.2d 573, 580 (9th Cir. 1992)). Sergeant Lynch's unjustified, swift, and violent treatment of Becky could reasonably be considered "provocative," triggering Carino's right to offer reasonable resistence. *Id.* (concluding that police officers' conduct could reasonably be

1 considered provocative where they gang-tackled a man violently and without warning).
2 Carino's gesture for Sergeant Lynch to stop was a reasonable, indeed natural, reaction to
3 the unexpected assault on his wife.  In any event, Sergeant Lynch and Officer Robinson
4 thereafter used a disproportionate amount of force against Carino given his lack of
5 resistance, even granting the officers leeway for the split-second judgments necessitated
6 by police work.

7 Carino's Fourth Amendment right to be free from excessive force was undoubtedly
8 established as of 2005.  Even so, the officers are entitled to immunity if they reasonably
9 but mistakenly believed that the force they employed was lawful given the circumstances
10 they confronted.  *See Drummond v. City of Anaheim*, 343 F.3d 1052, 1060 (9th Cir. 2003)
11 ("*Saucier* allowed for the possibility that an officer might misunderstand the amount of
12 force permissible under particular factual circumstances . . . ." (citing *Saucier v. Katz*, 533
13 U.S. 194, 205 (2001))).  No reasonable officer would believe that beating and using a
14 Taser on a compliant person who has committed no crime is permitted by the law,
15 especially once the person has been handcuffed and subdued.  *See id.* at 161 (holding that
16 officers' use of force against a prone and compliant suspect was excessive); *Davis v. City*
17 *of Las Vegas*, 478 F.3d 1048, 1057 (9th Cir. 2006) ("Any reasonable officer . . . would
18 have known . . . that swinging a handcuffed man into a wall head-first multiple times and
19 then punching him in the face while he lay face-down on the ground . . . was unnecessary
20 and excessive.").  The officers are therefore not immune from Carino's excessive force
21 claim.

22 **B.  Wrongful Arrest**

23 "The Fourth Amendment requires that a law enforcement officer have 'probable
24 cause' to arrest an individual without a warrant." *United States v. Jensen*, 425 F.3d 698,
25 704 (9th Cir. 2005).  "The test for whether probable cause exists is whether 'at the
26 moment of arrest the facts and circumstances within the knowledge of the arresting
27 officers and of which they had reasonably trustworthy information were sufficient to
28

1  warrant a prudent man in believing that the petitioner had committed or was committing
2  an offense.'" *Blankenhorn*, 485 F.3d at 471 (quoting *Jensen*, 425 F.3d at 704).
3        Carino was not committing a crime when they approached him in the parking lot.
4  Rather, Carino was arrested for assaulting the officers after they physically separated him
5  from his wife. He was also charged with resisting the officers' effort to arrest him after
6  the alleged assault. Carino's testimony, corroborated by an eye witness to the incident,
7  was that he never resisted, much less attacked, the officers that morning. A reasonable
8  jury could accept his version of the incident and conclude that the officers arrested Carino
9  without probable cause. The Fourth Amendment's prohibition on arrests lacking
10 probable cause has long been firmly established, and the officers do not contend, nor
11 could they contend, that they were reasonably mistaken about the extent of its protection
12 for Carino. The officers therefore are not immune from Carino's claim of wrongful
13 arrest.
14 **IV. Malicious Prosecution**
15       Carino asserts malicious prosecution claims against the officers under § 1983 and
16 Arizona law. "[T]o prevail on a § 1983 claim of malicious prosecution, a plaintiff 'must
17 show that the defendants prosecuted [him] with malice and without probable cause, and
18 that they did so for the purpose of denying [him] equal protection or another specific
19 constitutional right.'" *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004)
20 (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995)). Under
21 Arizona law, the "essential elements of malicious prosecution are (1) a criminal
22 prosecution, (2) that terminates in favor of plaintiff, (3) with defendants as prosecutors,
23 (4) actuated by malice, (5) without probable cause, and (6) causing damages. *Slade v.*
24 *Phoenix*, 112 Ariz. 298, 300, 541 P.2d 550, 552 (1975) (citing *Overson v. Lynch*, 83 Ariz.
25 158, 317 P.2d 948 (1957)). "Malicious prosecution actions are not limited to suits against
26 prosecutors but may be brought, as here, against other persons who have wrongfully
27 caused the charges to be filed." *Awabdy*, 368 F.3d at 1066 (citing *Galbraith v. County of*
28 *Santa Clara*, 307 F.3d 1119, 1126–27 (9th Cir. 2002)).

1  The officers present only two defenses to Carino's malicious prosecution claims.
2 First, they argue that several government officials' independent probable cause
3 determinations bar his claim against the officers. Second, they attack the sufficiency of
4 his notice of claim under A.R.S. § 12-821.01.

### A. Carino Has Rebutted the Presumption of Probable Cause

After Carino was arrested, a magistrate judge, a grand jury, and a deputy county attorney all determined that the officers had probable cause to arrest Carino for felony assault and resisting arrest. It is presumed that such officials "exercised independent judgment in determining that probable cause for an accused's arrest exists at that time," and therefore that police officers cannot be sued for damages suffered after such an independent probable cause determination. *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981); *cf. Haupt v. Dillard*, 17 F.3d 285 (9th Cir. 1994) (holding that when an individual has a full and fair opportunity to challenge a probable cause determination during the course of the prior proceedings, he may be barred from relitigating the issue in a subsequent § 1983 claim). However, the presumption can be rebutted through proof that a police officer "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Awabdy,* 368 F.3d at 1067, *see also id.* at 1068 ("[C]ollateral estoppel does not apply when the decision to hold a defendant to answer was made on the basis of fabricated evidence presented at the preliminary hearing or as the result of other wrongful conduct by state or local officials."). To rebut the presumption, a plaintiff must point to something more "than the fact that the officers' reports were inconsistent with [his] own account of the incidents leading to his arrest." *Blankenhorn*, 485 F.3d at 483 (quoting *Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994)) (alteration in original).

The magistrate judge, the sole witness before the grand jury, and the deputy county attorney all relied on the officers' reports to determine that there was probable cause to arrest Carino. Carino has supplied more than his own account of the incident to prove

- 10 -

1   that the officers knowingly inserted false information into the police reports.  He offers
2   the affidavit of Veronica Brown, who witnessed the incident and whose version of the
3   facts is dramatically different than the officers' version.  He also supplies testimony from
4   a City of Casa Grande paramedic, who stated that Carino showed no signs of alcohol
5   impairment twenty minutes after he was arrested.  Carino has therefore rebutted the
6   presumption of independent judgment.  *See Blankenhorn*, 485 F.3d at 483 ("Blankenhorn
7   submitted more than mere conclusory allegations of falsehood by submitting the
8   declaration of a witness, Garcia, that directly contradicted the police reports.").  Neither
9   the magistrate judge's, nor the grand jury's, nor the deputy county attorney's probable
10  cause determination disposes of Carino's § 1983 malicious prosecution claim.

**B.  Carino's Notice of Claim Provided Some Facts Supporting His Damages**

12         Under Arizona law, before initiating an action for damages against a public entity
13  or public officer, a claimant must provide a notice of claim in compliance A.R.S. § 12-
14  821.01.  A notice of claim shall contain, inter alia, "a specific amount for which the claim
15  can be settled[,] and the facts supporting that amount."  § 12-821.01(A).  The law does
16  not require the claimant to include "sufficient" facts to support the settlement amount,
17  *Backus v. State*, ___ P.3d ___, 2008 Ariz. App. LEXIS 111 at *16, 2008 WL 2764601 at
18  *5 (Ct. App. July 17, 2008), nor does it require the inclusion of "a specific calculation for
19  each possible basis for or element of damage—only a total amount," *Jones v. Cochise
20  County*, 187 P.3d 97, 102 (Ariz. Ct. App. 2008).  A notice of claim is sufficient if it
21  contains "*any* facts to support the proposed settlement amounts, regardless of how
22  meager."  *Backus*, 2008 Ariz. App. LEXIS 111 at *23, 2008 WL 2764601 at *7.

23         Carino's notice of claim contains some facts supporting his settlement demand.
24  He states that he was forced to incur legal fees to defend himself at significant cost to
25  himself and his family; that three character witnesses testified to his outstanding
26  reputation, and that the prosecution damaged his reputation despite his acquittal; that his
27  freedom to travel was restricted by the conditions of his release; and that he lived in fear
28  of a prison sentence for two years.  All of these facts relate to damages arising from his

- 11 -

1   state law malicious prosecution claim.

2         The officers complain that Carino did not provide a sufficient factual basis for the
3   general damages he included in his settlement demand.  In *Backus*, the court assessed the
4   factual basis for general damages included in a settlement demand in a wrongful death
5   suit.  The court noted the difficultly of fashioning a standard for evaluating the factual
6   basis for "[g]eneral damages . . . such as pain, suffering (physical and emotional), the
7   diminution or loss of the ability to engage in recreational and family activities, and, in
8   general, how the injury adversely affects the claimant's ability to participate in and enjoy
9   the daily activities of life."  *Id.* at \*18, 2008 WL 2764601 at \*6.  It concluded that "it was
10  enough for the State to understand that Backus was a surviving adult child and was
11  seeking compensation for the death of her father."  *Id.* at \*24, 2008 WL 2764601 at \*7–8.
12  The plaintiff could "simply indicate that any life has value, particularly to a surviving
13  family member, and . . . arbitrarily place a dollar figure on this admittedly purely
14  subjective assessment."  *Id.*

15        Carino noted that he suffered from restrictions on his freedom while he was
16  prosecuted.  He also noted the fear and anxiety that naturally arises in one facing an
17  undeserved prison sentence.  According to *Backus*, those facts are enough to support the
18  general damages that he claims were caused by the malicious prosecution.  The officers
19  rely heavily on *Franklin v. City of Phoenix*, No. CV-06-02316-PHX-NVW, 2007 U.S.
20  Dist. LEXIS 36409, 2007 WL 1463753 (D. Ariz. May 17, 2007), but in that case the
21  plaintiff failed to provide "*any* facts supporting the claimed amounts for emotional
22  distress and for damages to . . . reputation."  *Id.* at \*11, 2007 WL 1463753 at \*3 (quoting
23  *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, 297 n.3, 152 P.3d 490,
24  494 n.3 (2007)).  Carino, in contrast, has supplied some facts supporting both the damage
25  to his reputation and his emotional distress.  *See Castaneda v. City of Williams*, No.
26  CV07-00129-PCT-NVW, 2007 U.S. Dist. LEXIS 42980 at \*11–12, 2007 WL 1713328 at
27  \*4 (D. Ariz. June 12, 2007) ("Plaintiffs provided the City with information, however
28  sparse, about the nature and the extent of Ray Castaneda's 'physical and emotional'

- 12 -

1  injuries. This factual foundation satisfies the literal requirements of the statute . . . .").

2  If the officers wanted more or different information than he supplied, the proper
3  thing to do was to ask for it, not wait until after completing costly discovery to assert a
4  defense that was available from the outset. *See Backus*, 2008 Ariz. App. LEXIS 111 at
5  \*19–20, 2008 WL 2764601 at \*6 ("To the extent the governmental entity seeks additional
6  information to evaluate the demand, it certainly can ask for it . . . ."); *cf. Jones*, 187 P.3d
7  at 102 ("[W]aiver may be found when a governmental entity has taken substantial action
8  to litigate the merits of the claim that would not have been necessary had the entity
9  promptly raised the [notice of claim] defense."). Additionally, Carino properly waited
10 until the statutorily prescribed period had run to amend his complaint to include the state-
11 law malicious prosecution claim. A.R.S. § 12-821.01(E). Carino's notice of claim
12 therefore was not deficient.

13 IT IS THEREFORE ORDERED that the City of Casa Grande's motion for
14 summary judgment (doc. # 84) is granted.

15 IT IS FURTHER ORDERED that Officers Lynch, Sansone, and Robinson's
16 motion for summary judgment (doc. # 84) is denied.

17 DATED this 30th day of September, 2008.

_____
Neil V. Wake
United States District Judge

- 13 -